UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CECIL NEWELL, | ) | |
| | ) | |
| Plaintiff, | ) | 13-2018 |
| | ) | |
| v. | ) | |
| | ) | |
| KANKAKEE COUNTY SHERIFF'S | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER ON MOTION TO DISMISS

    The plaintiff, Cecil Newell, commenced this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. Defendants Timothy Bukowski, Michael Downey, Jerome Combs Detention Center ("JCDC"), Kankakee County Sheriff's Department, Jeffrey Long, and Charee Sangster filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The plaintiff did not respond by the May 9, 2013, deadline set through the court's CM/ECF system. Approximately two weeks after the deadline passed, the court set a new deadline of June 6, 2013 for the plaintiff to respond or file an amended complaint. The court stated that if the plaintiff did not respond or amend his complaint by the deadline, the court would presume that the plaintiff abandoned the litigation and would dismiss the case for failure to prosecute. *See* Order, d/e 12.

    The plaintiff then requested an extension to July 19, 2013, to respond or amend the complaint. The court granted an extension to June 25, 2013. On that date, the plaintiff filed an amended complaint [14], adding new defendants and allegations. There are now approximately twenty-five defendants in the case. The docket does not reflect service of process or an entry of appearance for some of those defendants, including federal defendants who were named in the original complaint.

    Defendants Kankakee County Sheriff's Department, Timothy Bukowski, Michael Downey, Charee Sangster, and newly-named defendants Jeffrey Long, Clyde Dayhoff, Heather Gill, Tiniki White, Adam Graves, Sonya Hanson, Andrew Delude, Matthew Meehan and Ward Adams (collectively, the "movants") have filed a motion to dismiss the amended complaint. (JCDC is not named as a defendant in the amended complaint.) Various defendants have not been identified by name, and there is no indication in the docket that defendants U.S. Marshal Service and deputy marshals Jeff Goble and Dean Lanter have been served. (The U.S. Marshal Service was named in the original complaint filed on January 18, 2013. The time for serving that defendant expired many months ago.)

    For the following reasons, the motion to dismiss [20] is denied.

FACTS

In July and August 2011, the plaintiff was a federal detainee from Indiana who was housed at JCDC in Kankakee, Illinois. (The east border of Kankakee County, Illinois, is on the Illinois-Indiana state line.) Newell states that he has multiple disabilities that he sustained in an auto accident in 2006. Newell has weakness and numbness in his left side and, in July 2011, he partially dragged his left leg. He also had incontinence with urine and bowel movements and required the use of adult diapers. In addition, he was unable to stand still without assistance, which made showering and using the toilet difficult. Newell also had asthma and took daily medications and/or treatments.

Despite his obvious disabilities and medical issues, Newell claims that he was assigned to a regular dorm on the top floor of the jail, and a top bunk. He had to hop on one leg to go up or down the stairs and needed assistance from other inmates to get into and out of his bunk. Newell was not given adult diapers until his third day at the jail. Even then, he was not given an adequate supply of diapers and would sometimes sit in a soiled diaper for days, and in clothes with urine and feces on them. He was not given enough biohazard bags, and the soiled diapers and bags piled up in his cell. On July 24, 2011, there was no one to assist Newell and he fell while attempting to get out of his bunk. He sat for two hours until someone came to help him. As a result, his left leg worsened and his right leg was numb. He could not walk at all and was forced to crawl down stairs on his buttocks, and scoot along the floor and walk on his hands.

The next day, he received a wheelchair and, at some point, was given a bottom floor/ bottom bunk in the medical section. However, no one helped him stand so he was unable to shower. His disabilities sometimes made it difficult to make it to the toilet in time. When he soiled himself, he could not clean himself or tend to his bodily needs. He also complained that he had an asthma attack, and needed his asthma medications, but the guard did not help him. Other inmates sometimes assisted Newell by pulling him around in a chair. Newell filed multiple grievances with very limited results. He alleges that the defendants subjected him to cruel and unusual punishment, pursuant to a widespread custom, policy or practice to deny medical care and keep inmates in unsafe, unhealthy, and inhumane conditions. Newell also claims that he was denied basic facilities such as showering and toileting because of his disabilities, and that the Kankakee County Sheriff's Department failed to meet his physical accessability needs and failed to accommodate his disabilities with suitable bed/sleeping quarters, toilet facilities, adult diapers, showering, and other basic activities.

ANALYSIS

In ruling on a motion to dismiss, a court must accept the plaintiff's well-pled allegations as true and draw reasonable inferences in the plaintiff's favor. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). Dismissal is appropriate when there are not "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). From the complaint, the court must separate facts from legal conclusions, and determine if the facts alleged plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The determination of plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at

1950.

## Count I - § 1983

Count I is asserted against all individual defendants. Bukowski, Downey, and Hanson argue that Newell does not allege they had personal involvement in the conduct complained of, other than to allege that they had knowledge of Newell's serious medical needs. They argue that the claims against them in their individual capacities must be dismissed. The court disagrees. "In order for a supervisor to be liable, they must be 'personally responsible for the deprivation of the constitutional right.' To show personal involvement, the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citations omitted). Bukowski and Downey are alleged to have developed, supervised, and enforced policies and practices of the jail, and ensured that grievances were received in the proper manner and were properly responded to. Moreover, they are alleged to have been aware of Newell's serious medical needs and his grievances, yet turned a blind eye to the situation.

The allegations against Hanson are a closer call. It is alleged that she and every other defendant violated Newell's rights as described in a very lengthy paragraph, without stating what, specifically, was done by Hanson. Nonetheless, the court is not concerned at this stage of the litigation with whether Newell has evidence to support every detail of his claims. Newell alleges that JCDC is designed to house "over 300" inmates, which is not an exceptionally large facility. The situation described by Newell, if true, is such that it would have been obvious to any correctional officer working in the area where Newell was housed. Newell claims that Hanson was one such person. Newell has pled facts sufficient to proceed further on his claims against Bujowski, Downey, and Hanson, in their individual capacities.

The movants also argue that the entire complaint suffers from a general notice problem: Newell does not identify which of the defendants were responsible for each particular problem. Newell identifies at least three categories of JCDC personnel who are alleged to have violated his rights: management, correctional officers, and medical personnel. He was at JCDC for approximately one month. His complaint describes many instances of requests for assistance and supplies, grievances denied, inadequate medical care, and injuries sustained at JCDC that were not treated. He need not allege precisely what each defendant did on each particular day on which he alleges a different instance of deliberate indifference. What any one officer did or didn't do, and when, will be fleshed out in discovery.[1]

---

[1] The defendants cite *Harper v. Dart*, 2010 WL 2697299 (N.D. Ill. July 6, 2010), where the defendant provided lengthy descriptions of his inability to obtain medical attention, without stating what was being alleged against which defendant(s); the plaintiff was granted leave to amend the complaint. The court could only speculate "as best as can be determined" that Harper suffered injuries and/or arthritis. *Harper*, 2010 WL 2697299, at *1. Newell's case is not similar to what is described in *Harper*.

### Count II – § 1983 Monell claim

The movants argue that Newell has failed to state a *Monell* claim. *See Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978). They argue that claims against Bukowski and Downey in their official capacities are essentially claims against the Kankakee County Sheriff's Office; thus, they are redundant and should be dismissed. They also argue that the claim should be against the Kankakee County Sheriff's *Office*, not the Kankakee County Sheriff's *Department*, citing *Wells v. Bureau Cnty.*, 723 F. Supp. 2d 1061 (C.D. Ill. 2010). However, in *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509 (7th Cir. 2007), the Seventh Circuit was apparently unconcerned with whether the Bureau County Sheriff's Department should have been sued as the Bureau County Sheriff's Office. Whether the suable entity in Kankakee is the Sheriff's Office or the Sheriff's Department may make little difference if the sheriff is sued in his official capacity. *Estate of Sims* is notable, however, for its discussion on the naming of other necessary parties, of which the plaintiff may wish to take note. *Estate of Sims*, 506 F.3d at 517.

The movants also argue that Newell has not alleged that an official policy was "the moving force" behind the constitutional violation, citing *Estate of Sims*. Newell does not point to any place in his 26-page complaint where he uses the phrase "moving force." To be a "moving force," there must be an official policy or custom that is not simply a contributing factor in the constitutional violation; it must be the direct cause of the violation. *Johnson v. Cook County*, 2013 WL 2005236, at *3 (7th Cir. May 15, 2013) (unpublished opinion) (citing *Estate of Sims*, 506 F.3d at 514; *LaMarca v. Turner*, 995 F.2d 1526, 1538 (10th Cir. 1993)). Newell alleges that the correctional staff acted pursuant to an official policy or custom not to perform a medical intake, investigate inmates' medical issues and/or complaints about problems with walking if they are ambulatory, nor provide sufficient medically-necessary hygiene items such as adult diapers to inmates, among other things. The allegations are sufficient; they amount to what can be considered a "moving force."

### Count III– ADA

The defendants argue that Newell's claim under Title II of the ADA must be dismissed because the only proper defendant in Count III is the Kankakee County Sheriff's Office. Newell has alleged that the Kankakee County Sheriff's Department and the United States Marshal Service, via defendants/deputy marshals Goble and Canter (for which no proof of service has been filed) barred Newell from various programs and basic facilities on the basis of his disabilities, and was treated differently than non-disabled similarly situated individuals. Title II of the ADA prohibits discrimination in public services, programs, and activities, including prisons and correctional facilities. *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 913 (N.D. Ill. 2009). The court need not search the complaint for magic words that explicitly state the defendant's discriminatory intent. The posture of this case is distinct from *Phipps*, which was a ruling on cross-motions for summary judgment. At this point in Newell's case, the court is not concerned with whether he has clearly alleged discriminatory intent. He claims he was barred from basic facilities on the basis of his disabilities. Whether he has sufficient evidence to show intentional discrimination is an inquiry reserved for a later date.

## CONCLUSION

For the foregoing reasons, the motion to dismiss [20] is denied in its entirety. The defendants shall file their answer within fourteen days of the date of this order.

Entered this 9th day of October, 2013.

/s/Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE